## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| ENTRUST ENERGY, INC. *et al.*[1] | Case No. 21-31070 (MI) |
| Post-Confirmation Debtors. | |
| ANNA PHILLIPS, as trustee of the ENTRUST LIQUIDATING TRUST, | Adv. Proc. No.  22-03018 (DRJ) |
| Plaintiff, | |
| v. | |
| ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC., | |
| Defendant. | |

## JOINT RULE 26(f)(3) REPORT

In accordance with Federal Rule of Civil Procedure 26(f)(3), as made applicable by Federal Rule of Bankruptcy Procedure 7026, Plaintiff Anna Phillips, as trustee of the Entrust Liquidating Trust (the "Trustee") and Defendant Electric Reliability Council of Texas, Inc. ("ERCOT") file this Joint Rule 26(f)(3) Report pursuant to this Court's Order Setting Rule 7016 Conference [Dkt. 4].

---

1   The Debtors in these chapter 11 cases that are subject to the Plan and the Trust Agreement (each, as defined below) are: Entrust Energy, Inc. ("Entrust"); Entrust Treasury Management Services, Inc.; Entrust Energy East, Inc.; Power of Texas Holdings, Inc. ("POTH"); Akyta Holdings, Inc.; Enserve, Inc.; Akyta, Inc.; Energistics, Inc.; NGAE, Inc. The Liquidating Trustee's mailing address is P.O. Box 500787, Atlanta, Georgia 31150.

The cases of the following Debtors were dismissed:  Knocked, Corp.; SPH Investments, Inc.; Akyta IP, Inc.; Surge Direct Sales, Inc.; Entrust Energy Operations, Inc.; and Strategic Power Holdings, LLC.

## I.    <u>Rule 7026 Conference</u>

On March 24, 2022, Counsel for the Trustee, Debbie Green, conferred with counsel for ERCOT, Jamil Alibhai, Ross Parker, and Kevin Lippman, by video conference. The parties discussed, among other things, the litigation schedule and timing of discovery.

## II.    <u>Nature and Basis of Claims and Defenses</u>

### A.    <u>The Trustee's Concise Factual Summary of Claims/Defenses:</u>

Effective as of April 1, 2015, Entrust and ERCOT entered into a Standard Form Market Participant Agreement (the "SFA"), which provides that the responsibilities and rights of the parties are governed by "the ERCOT Protocols, as amended in accordance with the change procedure(s) described in the ERCOT Protocols, in effect at the time of the performance or non-performance of an action."  On or about February 13, 2021, Winter Storm Uri ("Uri"), a historic blast of arctic weather producing abnormal subfreezing temperatures that lasted for multiple days, engulfed the state of Texas, resulting in a drastic drop in power generation.  In response, on February 15, 2021, the Public Utility Commission of Texas ("PUCT") issued an order to ERCOT that led to ERCOT raising market prices to $9,000/megawatt hour in violation of the ERCOT Protocols.  Exacerbating the damage to Entrust, ERCOT kept the improper pricing in place for 33 hours beyond what the PUCT order authorized.

ERCOT's manipulation of market pricing during Uri was disastrous for Entrust.  Shell terminated its agreements with Entrust, effectively destroying Entrust's ability to perform under its agreements with customers.  Then, when Entrust tried to quickly sell its Texas contracts to other retail providers, ERCOT transitioned approximately 13,000 of Entrust's Texas customers to the POLR program without any compensation to Entrust, despite the fact that Entrust had secured a letter of intent from a potential purchaser.

ERCOT has filed proofs of claims totaling $296,941,701.95 based on its improper pricing during Uri.  The SFA and the ERCOT Protocols set out detailed provisions that govern the calculation of amounts the Debtors are contractually obligated to pay to ERCOT, and the invoices constituting the claim do not conform to the terms of the SFA or the Protocols.  Rather, ERCOT's proofs of claim are based on charges that exceed the amount the Debtors owe pursuant to the SFA and the Protocols in effect during Uri.  Furthermore, ERCOT failed to mitigate such damages by keeping the $9,000/MWh in place for 33 hours after firm load shed, the purported reason for the $9,000/MWh price, had ceased.

ERCOT's actions during Uri constituted constructively fraudulent transfers under both the Bankruptcy Code and Texas law.  ERCOT's imposition of an excessive $9,000/MWh obligation on the Debtors was constructively fraudulent because the Debtors received less than a reasonably equivalent value in exchange for such obligation and the Debtors became insolvent as a result of such obligation.

ERCOT's mass transition of the Debtors' Texas customers violated both the US Constitution and the Texas Constitution, which both require payment of adequate compensation for the taking of private property for public use.  The mass transition was neither for public use nor for adequate compensation.

ERCOT violated the Debtors' due process rights under both the US Constitution and the Texas Constitution by imposing $9,000/MWh prices without providing the Debtors any opportunity to provide written comments or arguments or otherwise participate beforehand.

ERCOT tortiously interfered with the Debtors' potential contract with JP Energy.  It was reasonably probable that absent ERCOT's acts, the Debtors would have entered into a sale contract with JP Energy for the purchase of the relevant customer contracts. Furthermore, ERCOT knew

that its decision to transition the Debtors' remaining Texas customer contracts to the POLRs would interfere with the sale to JP Energy, as the Debtors informed ERCOT about the potential deal with JP Energy on the same day that ERCOT informed the Debtors of the mass transition.

ERCOT was negligent in failing to take reasonable care in estimating and planning for Uri, failing to take reasonable corrective action when it became clear that its own projections showed insufficient capacity to meet forward demand, and failing to reduce the $9,000/MWh price once firm load shed ceased.

Finally, given the foregoing egregious conduct by ERCOT, ERCOT's proofs of claim should be equitably subordinated to the claims of other unsecured creditors.

B.     ERCOT's Concise Factual Summary of Claims/Defenses:

The Trustee alleges ERCOT violated the Protocols and the respective Standard Form Market Participant Agreement (together, the "SFA") that Entrust and POTH each entered into with ERCOT by charging Entrust and POTH $9,000/MWh for electricity during the winter storm in February 2021 ("Winter Storm Uri"). However, during Winter Storm Uri, the Public Utility Commission of Texas ("PUCT") ordered ERCOT to set the price of electricity at the regulatory maximum to spur generation and discourage consumption, thereby protecting the grid's reliability. Applicable law requires that ERCOT "determine the market clearing prices of energy and other ancillary services"—"[e]xcept as otherwise directed by the [PUCT]." The PUCT set the $9,000/MWh scarcity pricing cap in the wholesale market and retained the supervening authority to "tak[e] actions necessary to protect the public interest, including actions that are otherwise inconsistent with the provisions in this section."

On February 15 and 16, 2021, the PUCT issued orders (the "PUCT Orders") determining that "energy prices across the system are clearing at less than $9,000," noted that was "inconsistent

with the fundamental design of the ERCOT market," and concluded that because "scarcity [was] at its maximum," "the market price for the energy . . . should also [have been] at its highest." The PUCT thus *ordered* ERCOT to adjust "ERCOT prices to ensure they accurately reflect the scarcity conditions in the market" by "ensur[ing] that firm load that is being shed in EEA3 is accounted for in ERCOT's scarcity pricing signals."

ERCOT had a duty to comply with the PUCT Orders and did so by making an administrative adjustment to ERCOT's pricing mechanisms. The SFA recognized the PUCT's ability to take action inconsistent with any provisions therein. The SFA was expressly made "subject to" PUCT rules and orders, which "shall prevail" in the event of a "conflict" with the SFA. As such, ERCOT did not violate the SFA or the Protocols by complying with the PUCT Orders.

The Trustee has also alleged that ERCOT failed to mitigate its damages by keeping the HCAP in place during the 33 hours after firm load shed allegedly ended. However, the Trustee cannot avoid unpaid invoices on the theory that ERCOT can retroactively lower the price of the electricity purchased by Entrust and POTH.

Entrust and POTH failed to pay ERCOT approximately $298 million in invoices for energy that they purchased and used to serve their customers during Winter Storm Uri. Entrust and POTH did not receive less than reasonably equivalent value for the electricity they purchased and as such, the Trustee cannot maintain a claim for fraudulent transfer. It is undisputed that ERCOT charged $9,000/MWh for energy during the relevant period at the PUCT's direction. Under the PUCT Orders $9,000/MWh is *per se* the value of the goods Entrust and POTH received under the PUCT Orders. In other words, the PUCT Orders set the value of energy (for all market participants, including Entrust and POTH) for the relevant time period, and that value is $9,000/MWh.

On March 2, 2021, ERCOT provided Entrust with a notice of a material breach under the SFA and Protocols for failure to provide collateral to ERCOT and pay invoices when due (the "Entrust Default Notice"). The Entrust Default Notice stated that Entrust had "one (1) Bank Business Day after delivery of the notice" to fully pay ERCOT the unpaid invoices and collateral amounts.

On March 3, 2021, ERCOT informed Entrust that Entrust had failed to cure its material breach stated in the Default Notice and, therefore, ERCOT revoked Entrust's rights as a Qualified Scheduling Entity ("QSE") and terminated the SFA effective immediately. Additionally, ERCOT informed Entrust that ERCOT had initiated a mass transition of Entrust's remaining customers to a "provider of last resort" ("POLR").

Also on March 3, 2021, ERCOT informed POTH that ERCOT had terminated Entrust's SFA and that POTH had two Bank Business Days to designate and begin operating with a new QSE. On March 8, 2021, ERCOT notified POTH of a material breach under its SFA for its failure to designate a QSE and that it had "one (1) Bank Business Day after delivery of the notice" to cure the default (the "POTH Default Notice"). On March 9, 2021, ERCOT informed POTH that it had failed to cure its material breach stated in the POTH Default Notice and, therefore, POTH's rights as a market participant were revoked and its SFA with ERCOT was terminated effective immediately. Additionally, ERCOT informed POTH that ERCOT had initiated a mass transition of POTH's remaining customers to a POLR.

The Trustee has alleged that this mass transition of customers was a violation of Entrust's and POTH's rights under the US Constitution and Texas Constitution. This is incorrect. ERCOT's consummation of the mass transition was pursuant to Texas law and was an exercise of express authority ERCOT holds under the SFA and Protocols.

As a result of the mass transition of customers, the Trustee has alleged that ERCOT tortiously interfered with a potential contract with an entity named JP Energy. The Trustee's claim fails because ERCOT's conduct was not independently tortious and ERCOT acted in accordance with the mass transition procedures outlined under the Protocols (and thus the SFA). Furthermore, the Trustee cannot prove that ERCOT's actions prevented either Entrust or POTH from entering into a sale contract with JP Energy.

The Trustee does not have a valid equitable subordination claim because ERCOT did not have a fiduciary obligation to Entrust or POTH, ERCOT did not exercise control over Entrust or POTH, and there is no allegation that ERCOT defrauded Entrust or POTH. There is no "egregious conduct" that supports an equitable subordination claim.

ERCOT filed a Motion to Dismiss and for Abstention or Stay [Dkt. 10] on March 25, 2022. In short, the Complaint asserts an array of causes of action, each of which the Court should abstain from deciding under 28 U.S.C. § 1334(c)(1) because the state law issues they raise predominate over the bankruptcy issues. Alternatively, this Court should abstain from deciding the Trustee's claims under *Burford v. Sun Oil Co*. The *Burford* decision and Supreme Court precedent regarding judicial abstention compel this Court to abstain from hearing the Trustee's attacks on the PUCT Orders and Texas's regulation of electricity.

In addition, this Court should dismiss the Complaint pursuant to the filed rate doctrine and because of the Trustee's failure to join the PUCT. The Trustee's pricing claims are designed to nullify the PUCT's price-setting orders, which constitute a fixed rate. Because the PUCT must be joined, but cannot because of its sovereign immunity, dismissal is appropriate.

Finally, should the Court reach the merits of the causes of action, the Court should dismiss them pursuant to Rule 12(b)(6) because the Trustee has not and cannot plead a plausible cause of

action otherwise. All counts should therefore be dismissed with prejudice.

### III.   **Early Settlement or Resolution**

The parties believe that a settlement is possible, and they will continue to work towards an early resolution.  The parties also discussed whether alternative dispute resolution will be helpful to the resolution of this case and agreed to further discuss engaging in mediation at an appropriate time in the case.

### IV.   **Discovery Plan**

Pursuant to Rule 26(f)(3), the parties jointly prepared and propose to the Court the following discovery plan:

A.   Rule 26(f)(3)(A) - what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made;

The parties shall make their initial disclosures required under Federal Rule of Bankruptcy Procedure 7026(a)(1) no later than Wednesday, April 27, 2022.

B.   Rule 26(f)(3)(B) - the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;

In the event this adversary proceeding is not dismissed, discovery will be needed on all issues joined by the pleadings, by initial disclosures, and by subsequent discovery.  Discovery will not need to be conducted in phases. However, ERCOT believes that discovery could be streamlined based on discovery already conducted in other adversary proceedings.

The parties anticipate that fact discovery will take five (5) to six (6) months and will commence after the parties exchange initial disclosures on April 27, 2022. The parties agree to exchange expert reports on issues for which the party bears the burden of proof no later than sixty (60) days after the close of fact discovery, responsive expert reports thirty (30) days thereafter, and

conclude expert depositions within one month thereafter.

      C.      <u>Rule 26(f)(3)(C) - any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced;</u>

The parties agree to service of discovery materials by email and will cooperate regarding the format for production of documents.

      D.      <u>Rule 26(f)(3)(D) - any issues about claims of privilege or of protection as trial-preparation materials, including—if the parties agree on a procedure to assert these claims after production—whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502;</u>

The parties are amenable to entering a protective order to protect confidential business information, and the parties agree to cooperate in the preparation of a joint protective order to be submitted to the Court. The parties believe that a confidentiality/protective order should be entered, with the order providing a claw back process for privileged, classified, or otherwise protected information.

      E.      <u>Rule 26(f)(3)(E) - what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed; and</u>

The parties agree that the default discovery limitations set forth in the Federal Rules of Civil Procedure shall apply.

      F.      <u>Rule 26(f)(3)(F) - any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).</u>

None at this time.

Dated:  March 30, 2022          Respectfully submitted,

                         **MCDERMOTT WILL & EMERY LLP**

                         */s/ Debbie E. Green*
                         Charles R. Gibbs (TX Bar No. 7846300)
                         Debbie E. Green (TX Bar No. 24059852)
                         2501 North Harwood Street, Suite 1900

Dallas, Texas 75201-1664
Telephone: (214) 295-8000
Facsimile: (972) 232-3098
crgibbs@mwe.com
dgreen@mwe.com

-and-

Darren Azman (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
dazman@mwe.com

**Counsel to the Entrust Liquidating Trust**

**MUNSCH HARDT KOPF & HARR, P.C.**

*/s/ Jamil N. Alibhai*
Kevin M. Lippman
Texas Bar No. 00784479
klippman@munsch.com
Deborah Perry
Texas Bar No. 24002755
dperry@munsch.com
John Cornwell
Texas Bar No. 24050450
jcornwell@munsch.com
Jamil N. Alibhai
Texas Bar No. 00793248
jalibhai@munsch.com
Ross H. Parker
Texas Bar No. 24007804
rparker@munsch.com
Julian P. Vasek
Texas Bar No. 24070790
jvasek@munsch.com
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

-and-

10

**WINSTEAD PC**
Elliot Clark
Texas Bar No. 24012428
eclark@winstead.com
Ron H. Moss (*pro hac vice motion to be filed*)
Texas Bar No. 14591025
rhmoss@winstead.com
401 Congress Avenue, Suite 2100
Austin, Texas 78701
Telephone: (512) 370-2800
Facsimile: (512) 370-2850

*Counsel for Defendant*
*Electric Reliability Council of Texas, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 30, 2022, I caused a true and correct copy of the foregoing document to be served via CM/ECF on all counsel of record.

*/s/ Debbie E. Green*
Debbie E. Green