United States Bankruptcy Court
Southern District of Texas

**ENTERED**

December 11, 2025

Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 21-31070** |
| **ENTRUST ENERGY, INC.,** *et al.*, | § | |
| | § | **CHAPTER 11** |
| | § | |
| Debtors. | § | |
| | § | |
| **ANNA PHILLIPS, AS TRUSTEE OF THE ENTRUST LIQUIDATING TRUST,** | § | |
| | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 22-3018** |
| | § | |
| **ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.,** | § | |
| | § | |
| Defendant. | | |

## MEMORANDUM OPINION

Electric Reliability Council of Texas, Inc. ("ERCOT"), moves for abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) and 28 U.S.C. § 1334(c), or to dismiss Anna Phillips' second amended complaint for failure to state a claim upon which relief can be granted.[1]  For the reasons explained below, the Trustee's takings claim is dismissed. ERCOT's motion to dismiss the gross negligence claim is converted to a motion for summary judgment.

---

[1] ECF No. 109.

## I.    BACKGROUND & PROCEDURAL POSTURE[2]

This adversary proceeding arises out of the events of Winter Storm Uri in February 2021, which rendered Entrust Energy, Inc. insolvent.[3]

Entrust was an energy company that provided electricity and natural gas to residential and commercial customers. *Phillips v. Electric Reliability Council of Tex. (In re Entrust Energy Inc.)*, 101 F.4th 369, 378–83 (5th Cir. 2024). ERCOT is a Texas nonprofit corporation that is appointed by the Public Utilities Commission of Texas ("PUC") to serve as the independent system operator of the Texas electricity grid.[4]

"ERCOT is responsible for ensuring the reliability and adequacy of the regional electrical network and that electricity production and delivery are accurately accounted for among the generators and wholesale buyers and sellers." *In re Entrust Energy Inc.*, 101 F.4th at 370 (quoting TEX. UTIL. CODE § 39.151(a)) (internal citations omitted). In accordance with these duties, ERCOT determines market-clearing prices unless otherwise directed by the PUC and acts as the sole buyer to each seller of electricity, and the sole seller to each buyer. *ERCOT v. Just Energy Tex., L.P. (In re Just Energy Grp., Inc.)*, 57 F.4th 241, 246 (5th Cir. 2023).

While Texas's energy system generally operates on free-market principles, state law provides that every customer of a retail utility "is entitled . . . to be served by a provider of last resort ("POLR") that offers a [PUC]-approved standard service package." TEX. UTIL. CODE § 39.101(b)(4). Thus, if a retail electric provider fails to serve any or all of its customers, a POLR provides the standard retail service package for that customer with no interruption of service to any customer. *Id.* §

---

[2] For a detailed background of this case and ERCOT's functions, see *Phillips v. Electric Reliability Council of Tex. (In re Entrust Energy Inc.)*, 101 F.4th 369, 378–83 (5th Cir. 2024).

[3] *See* Case No. 21-31070.

[4] ECF No. 108, at 2–3.

39.106(g).   The PUC implements the POLR program by requiring ERCOT to transfer a utility's customers to a POLR if the utility fails to meet its obligations to ERCOT.  16 TEX. ADMIN. CODE § 25.43(a).  This is known as a "Mass Transition."  *Id.* § 25.43(l).

In 2015, Entrust executed a Standard Form Agreement with ERCOT to purchase electricity on the ERCOT markets.  *In re Entrust Energy, Inc.*, 101 F.4th at 380.  Entrust agreed to be bound by the ERCOT Nodal Protocols,[5] which are a set of comprehensive rules that govern all aspects of ERCOT's operations.[6]  Several ERCOT Protocols address the POLR program and Mass Transitions.[7]

In February 2021, Winter Storm Uri struck Texas, and a large portion of the grid's electricity generation capacity went offline as demand spiked.  *In re Entrust Energy, Inc.*, 101 F.4th at 380.  In response, ERCOT ordered rolling blackouts which artificially reduced demand.  *Id.* at 381.  Additionally, ERCOT interpreted guidance issued by the PUC as requiring it to set energy prices at the highest lawful price of $9,000/MWh.  *Id.*  This resulted in Entrust receiving an electricity bill of about $300 million.  *Id.*

One day into Uri, one of Entrust's financial backers terminated its agreements with Entrust, rendering it incapable of meeting its obligations to its customers.  *Id.*  Entrust attempted to sell its remaining customers to other retail energy providers in order to limit the number of customers that would be transitioned to a POLR.[8]  In March of 2021, Entrust sold approximately 91,000 commercial and residential customer equivalents ("RCEs") to Rhythm Ops, LLC.[9]  Entrust sought to sell their remaining approximately 90,000 RCEs and received a letter of intent

---

[5] A copy of the Protocols in force at the relevant time can be found at: https://www.ercot.com/files/docs/2021/08/18/February_1 2021_Nodal_Protocols.pdf.

[6] ECF No. 108, at 4–5.

[7] *Id.* at 8.

[8] *Id.* at 7.

[9] *Id.* at 9.

from a prospective purchaser.[10]  Entrust notified ERCOT and requested a week to close the sale.[11]  ERCOT later informed Entrust that it was in breach of its contract and that ERCOT planned to immediately transition Entrust's existing customers to a POLR.[12]  Entrust transitioned the customers to a POLR shortly thereafter.[13]

On March 30, 2021, Entrust and its affiliates commenced chapter 11 proceedings in this Court.[14]  In August 2021, ERCOT filed claims against Entrust totaling nearly $300 million.  Entrust's chapter 11 plan was confirmed in December 2021 and became effective in January 2022.[15]  Entrust's liquidating chapter 11 plan established the Entrust Liquidating Trust and appointed Ms. Phillips as the Trustee.[16]  Phillips initiated this adversary proceeding in February 2022.[17]

ERCOT moved for abstention under *Burford v. Sun Oil Co*, 319 U.S. 315 (1943) and dismissal under Rule 12(b)(6).[18]  The Trustee withdrew two of the twelve causes of action, and the Court dismissed six.[19]  In June 2022, the Trustee filed the Amended Complaint with six counts.[20]  Relevant here are the Trustee's claims that ERCOT violated the takings clause of the Fifth Amendment in violation of 42 U.S.C. § 1983 and that ERCOT was grossly negligent by failing to ensure that the grid was adequately winterized for a storm like Winter Storm Uri.[21]

---

[10] *Id.* at 9–10.

[11] *Id.* at 10.

[12] *Id.*

[13] *Id.*

[14] Case No. 21-31070, ECF No. 1.

[15] Case No. 21-31070, ECF Nos. 480; 493.

[16] Case No. 21-31070, ECF No. 443.

[17] ECF No. 1.

[18] ECF No. 10.

[19] *See* ECF No. 44.

[20] ECF No. 49.

[21] *See id.; see also* ECF No. 108.

ERCOT again asked for *Burford* Abstention and moved to dismiss under Rule 12(b)(6).[22]  The Court declined to abstain and dismissed only one of the six counts—the section 1983 claim.[23]  ERCOT appealed and the Trustee cross-appealed, resulting in the United States Court of Appeals for the Fifth Circuit's opinion in *Phillips v. Electric Reliability Council of Texas (In re Entrust Energy Inc.)*, 101 F.4th 369 (5th Cir. 2024).

The Fifth Circuit held that the Court abused its discretion by not abstaining on the takings claim.  *Id.* at 394.  The Fifth Circuit remanded with instructions to dismiss four of the six claims and stay adjudication of the takings claim and gross negligence claim "pending the resolution of current state proceedings that bear on ERCOT's and the PUC's actions during Uri."  *Id.* at 396.  This Court promptly complied with the mandate.

On May 8, 2025, this Court terminated the abatement.[24]  On July 7, 2025, the Trustee filed her second amended complaint.[25]  In her amended complaint, the Trustee asserts a claim for violation of the takings clause under 42 U.S.C. § 1983 and a state law gross negligence claim.[26]  ERCOT again moves for abstention and dismissal under Rule 12(b)(6).[27]

## II.   JURISDICTION AND VENUE

28 U.S.C. § 1334(a) provides the District Courts with jurisdiction over this proceeding.  28 U.S.C. § 157(b)(1) states that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate

---

[22] ECF No. 52.

[23] ECF No. 66.

[24] ECF No. 100.

[25] ECF No. 108.

[26] *See id.*

[27] ECF No. 109.

orders and judgments, subject to review under section 158 of this title."
This proceeding has been referred to this Court under General Order
2012-6 (May 24, 2012). This Court has jurisdiction in this proceeding as
it is a core proceeding which the Court can consider under 28 U.S.C. §§
157(b)(2)(A) and (B). The Court has constitutional authority to enter
final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87
(2011). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

### III.   LEGAL STANDARD

The Court reviews motions under Federal Rule of Civil Procedure
12(b)(6) "accepting all well-pleaded facts as true and viewing those facts
in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d
483, 484 (5th Cir. 2007). However, the Court will not strain to find
inferences favorable to the plaintiff. *Southland Sec. Corp. v. INSpire
Ins. Sols. Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

Motions to dismiss for failure to state a claim upon which relief
can be granted "are viewed with disfavor and are rarely granted."
*Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting
*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir.
2005)). To avoid dismissal under Rule 12(b)(6), the plaintiff must
provide sufficient factual matter to state a claim for relief that is
plausible on its face when accepting that factual matter as true.
*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp.
v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face
when "the plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the misconduct
alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

The plausibility standard asks for more than "a sheer possibility
that the defendant acted unlawfully." *Id.*; *see Lormand*, 565 F.3d at 232
("[A] complaint 'does not need detailed factual allegations,' but must
provide the plaintiff's grounds for entitlement to relief—including
factual allegations that when assumed to be true 'raise a right to relief

above the speculative level.'" (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007))).

## IV.    DISCUSSION

ERCOT argues that the Court must abstain under *Burford v. Sun Oil Co.* or alternatively should abstain under 28 U.S.C. § 1334(c)(1).[28] ERCOT also contends that the Trustee's second amended complaint should be dismissed for failure to exhaust administrative remedies and failure to state claims upon which relief can be granted.[29]   Each of ERCOT's arguments will be addressed in turn.

### A.    Abstention

The Court declines to abstain under *Burford* and 28 U.S.C. § 1334(c)(1). This Court, like all federal courts, has a "virtually unflagging obligation" to exercise the jurisdiction given to it. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976).  It also has an express mandate from the Fifth Circuit.  *In re Entrust Energy Inc.*, 101 F.4th at 395−396.

In *In re Entrust Energy, Inc.*, the Fifth Circuit stated that it: "direct[s] the bankruptcy court to stay both the gross negligence claim and the takings claim *pending resolution of current state proceedings that bear on ERCOT's and the PUC's actions during Uri*." *Id.* (emphasis added).

The pending state proceeding the Fifth Circuit cited was the litigation between the PUC and Luminant Energy Company that was then before the Texas Supreme Court. *Id.* at 395 n. 22.  That case was decided by the Texas Supreme Court in June 2024.  *See Pub. Util. Comm'n of Tex. v. Luminant Energy Co.*, 691 S.W.3d 448 (Tex. 2024). The Court is unaware of any other pending state court litigation that pertains to these issues.  Thus, this Court must exercise jurisdiction.

---

[28] *Id.* at 16−29.

[29] *Id.* at 29−51.

ERCOT's strained arguments that the Fifth Circuit's mandate requires this Court to abstain under *Burford* or allows the Court to permissively abstain under section 1334 do not warrant any legitimate consideration in the face of the Fifth Circuit's unambiguous mandate.

### B.   Exhaustion of Administrative Remedies

ERCOT argues that the Trustee's second amended complaint must be dismissed for failure to exhaust administrative remedies before the PUC.[30]  As the Fifth Circuit noted in *Entrust*:

> Challenges to ERCOT's pricing decisions, invoices, or actions under the Protocols must be brought first to ERCOT via the dispute-resolution mechanisms specified in the Protocols. Protocols §§ 9.14.1, 20.9. ERCOT's resolution is then subject to review by the PUC. TEX. UTIL. CODE § 39.151(d-4)(6). The PUC's orders are subject to judicial review as provided in the Texas Administrative Procedure Act. TEX. GOV'T CODE § 2001.176; TEX. UTIL. CODE §§ 11.007(a); 15.001. That review occurs in the Travis County district court or in the newly-created Fifteenth Court of Appeals District. *See* TEX. GOV'T CODE § 2001.176. ERCOT, however, is provided absolute immunity from damage actions arising out of the implementation of a Mass Transition. *See* 16 TEX. ADMIN. CODE § 25.43(o)(2).

101 F.4th at 380.

ERCOT contends that the Trustee's failure to exhaust administrative remedies deprives this Court of jurisdiction.[31]  ERCOT relies on the Texas Supreme Court's decision in *CPS Energy v. Electric Reliability Council of Texas*, which held that the PUC had exclusive jurisdiction over CPS' claims against ERCOT for negligence and a taking under the Texas Constitution.  671 S.W.3d 605, 620 (Tex. 2023).[32] ERCOT is wrong.

---

[30] ECF Nos. 109, at 29−31; 116, at 14−17.

[31] ECF No. 109, at 29 n. 90.

[32] *Id.* at 30−31.

"When it comes to jurisdiction of the federal courts, truly, to paraphrase the scripture, the Congress giveth, and the Congress taketh away." *Senate Select Comm. on Presidential Campaign Activities v. Nixon*, 366 F. Supp. 51, 55 (D.D.C. 1973). Congress alone can enact procedural requirements with jurisdictional consequences. *In re Serta Simmons Bedding, L.L.C.*, 125 F.4th 555, 575 (5th Cir. 2024).

Congress has given the District Court jurisdiction. *See* 28 U.S.C. § 1334. The District Court has referred these proceedings to this Court. *See* 28 U.S.C. § 157; Gen. Order 2012-6 (May 24, 2012). Although *Congress* may codify the doctrine of exhaustion of administrative remedies as a jurisdictional bar, *see Miranda v. Garland*, 34 F.4th 338, 351 (4th Cir. 2022), it has not done so here. And while the existence of a state law administrative scheme may make abstention prudent, state law cannot override an act of Congress and deprive a federal court of jurisdiction. *See* U.S. CONST. Art. VI., cl. 2 (the "Supremacy Clause").

### C.    *Dismissal Under Rule 12(b)(6)*

ERCOT argues that the Trustee's Fifth Amendment takings claim and gross negligence claim must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[33] ERCOT offers numerous reasons why the Trustee's complaint fails to state claims upon which relief be can granted.

### 1. Fifth Amendment Takings Claim

The Trustee's first cause of action asserts a claim for violation of the takings clause of the U.S. Constitution under 42 U.S.C. § 1983 or directly under the Fifth Amendment.[34] The Trustee alleges that ERCOT's Mass Transition of customers under the POLR program constituted a taking.[35]

---

[33] ECF No. 109, at 32–51.

[34] ECF No. 108, at 10–11.

[35] *Id.*

ERCOT offers several reasons why the Trustee's takings claim fails.[36]

The Takings Clause provides: "[n]or shall private property be taken for public use, without just compensation." U.S. CONST., amend V. To prevail on a takings claim, "a plaintiff first must demonstrate that he has a protectable property interest." *Dennis Melancon, Inc. v. New Orleans*, 703 F.3d 262, 269 (5th Cir. 2012) (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1000 (1984)). Property interests are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 55 (1979).

The Trustee's complaint states that Debtors "had a vested property interest in their contracts with their remaining RCEs" and that "ERCOT took this property interest by performing the Mass Transition."[37] Irrespective of the many issues ERCOT raises with the Trustee's takings claim, her claim fails if no property was taken. The Trustee does not provide a theory of her taking (e.g., regulatory taking). However, after an independent analysis, the Court concludes that no taking occurred.

This Court has previously determined that another retail energy provider did *not* have a property interest *in its customers* that were transitioned to a POLR during a Mass Transition because ERCOT had terminated the provider's contracts before the Mass Transition. *Nelms v. TXU Retail Energy Co. LLC (In re Griddy Energy, LLC)*, Case No. 21-30923, Adv. No. 22-3025, 2022 WL 6795069, at *3–4 (Bankr. S.D. Tex. Oct. 6, 2022). Trying to avoid the same outcome as *Nelms*, the Trustee argues that Entrust had a property interest *in its contracts* with its customers.[38] This does not save the Trustee's takings claim. The contracts were not transitioned to the POLR; only the customers were transitioned.

---

[36] ECF No. 109, at 32−38.

[37] ECF No. 108, at 10−11.

[38] *Id.*

Over a century ago, the Supreme Court decided *Omnia Commercial Co. v. United States*, 261 U.S. 502 (1923). There, the government requisitioned the entire production of a steel company and directed the company not to comply with one of its outstanding contracts. *Id.* at 507. The counterparty to the contract with the steel company sued alleging a taking in violation of his Fifth Amendment rights. *Id.* at 507−08. The Court stated "[t]he contract in question was property within the meaning of the Fifth Amendment . . . and if taken for public use the government would be liable. But destruction of, or injury to, property is frequently accomplished without a 'taking' in the constitutional sense." *Id.* at 508.

The Court cautioned against conflating the contract and its subject matter and stated that:

> the essence of every executory contract is the obligation which the law imposes upon the parties to perform it. 'It [the contract] may be defined to be a transaction between two or more persons, in which each party comes under an obligation to the other, and each reciprocally acquires a right to whatever is promised by the other.'

*Id.* at 510 (alteration in original) (quoting *Trustees of Dartmouth College v. Woodward*, 4 Wheat. 518, 654 (1819)).

The Court found that the government did *not* acquire the obligation or the right to enforce it. *Id.* at 510−11. It noted that the Fifth Amendment's takings clause "has always been understood as referring only to a direct appropriation, and not to consequential injuries resulting from the exercise of lawful power."[39] *Id.* at 510.

---

[39] This case was decided before regulatory takings jurisprudence was developed, but there was also no regulatory taking under *Penn Cent. Transp. Co. v. New York*, 438 U.S. 104 (1978). Under *Penn Central*, courts examine (1) the economic impact of the regulation; (2) its interference with reasonable investment-backed expectations; and (3) the character of the government action. Significant here, is that this was not a newly imposed government action, but an existing scheme in place that Entrust voluntarily entered into. Inasmuch as Entrust could not lawfully perform its contracts at the time of the Mass Transition, the economic impact and the

In *Hooten v. United States*, 405 F.2d 1167 (5th Cir. 1969), the owner of a property management agency had rent collection contracts with four tenement properties which were condemned by the government.  Hooten sued alleging that the government's condemnation of the land resulted in a taking of his interest in the management contracts and that he was entitled to just compensation.  *Id.* at 1168. Hooten's claim was summarily rejected.  *Id.* at 1169.  The Fifth Circuit stated that it is well-settled that where a business is damaged or destroyed incident to a condemnation of land, such losses are not compensable under the Fifth Amendment.  *Id.*

Entrust entered into the Standard Form Agreement with ERCOT aware that the energy market in Texas, while embracing free market principles, was highly regulated.[40]  It was aware that it was subject to the Protocols and that failure to meet its obligations to ERCOT could result in a termination of its right to serve customers and a Mass Transition of its customers.  Yet, Entrust signed the Standard Form Agreement and entered the energy market.  When Entrust failed to meet its obligation, ERCOT terminated its contract with Entrust and effected a mass transition of Entrust's customers as required under the Protocols and Texas law.

ERCOT did *not* appropriate any of Entrust's contracts with its customers for public use—and neither ERCOT nor the POLR acquired the contracts or the right to enforce them.  *Omnia Com. Co.*, 261 U.S. at 510−11.  Rather, ERCOT's termination of its contract with Entrust rendered Entrust's performance of its contracts with customers unlawful and the Mass Transition transferred the customers to a POLR.

Entrust's contracts with its customers remained in place and no taking of its contracts or its customers occurred.  While ERCOT's actions of terminating its contract and transferring Entrust's customers

---

interference with Entrust's reasonable investment-backed expectations are nonexistent.  The government action is not a taking.  No appropriation of any protected property interest occurred here.

[40] ECF No. 1-2.

damaged the value of the customer contracts, the contracts were not taken by ERCOT for public use.  Entrust had no property interest in its customers.  Such contractual losses are non-compensable under the Fifth Amendment.  *Hooten*, 405 F.2d at 1168–69.  The Trustee's takings claim is dismissed because no taking occurred at all.  There is no stated claim for which relief can be granted.

### 2.  Gross Negligence Claim

The Trustee's second cause of action is for gross negligence under Texas law.[41]  There is no independent federal action.  If this cause of action exists, it must exist under Texas common law or statutory law. The Trustee alleges that ERCOT was grossly negligent by failing to take adequate steps to prepare for Winter Storm Uri despite its knowledge that extreme weather was likely during the winter of 2020-2021.[42]  In response, ERCOT offers multiple different defenses.[43]

Significantly, ERCOT argues that it is immune from suit under Texas Law as established in the Texas Supreme Court's decision in *CPS Energy v. Electric Reliability Council of Texas,* 671 S.W.3d 605 (Tex. 2023).[44]  In that case, the Texas Supreme Court held that ERCOT enjoys state sovereign immunity as an arm of the state.  *Id*. at 628.  State sovereign immunity and Eleventh Amendment sovereign immunity are distinct concepts.  *Anthology, Inc. v. Tarrant Cnty. Coll. Dist.*, 136 F.4th 549, 552 (5th Cir. 2025).[45]

Eleventh Amendment sovereign immunity derives from the Constitution itself.  U.S. CONST. amend XI.  The Eleventh Amendment

---

[41] ECF No. 108, at 11–13.

[42] *Id.*

[43] ECF No. 109, at 38–51.

[44] *Id.* at 39–40.

[45] *Cf. United States v. Miller*, 604 U.S. 518, 539 (2025) (holding that "[s]ection 106(a) of the Bankruptcy Code abrogates sovereign immunity for the federal cause of action created by § 544(b).  It does not take the additional step of abrogating sovereign immunity for whatever state-law claim supplies the "applicable law" for a trustee's § 544(b) claim.").

provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[46] *Id.* Absent waiver, the Eleventh Amendment acts as a jurisdictional bar to suit in federal court. *Watson v. Texas*, 261 F.3d 436, 440–41 (5th Cir. 2001). The Fifth Circuit has already determined that ERCOT is not a "state" entitled to Eleventh Amendment sovereign immunity. *In re Entrust Energy Inc.*, 101 F.4th at 387.

State sovereign immunity is neither derived from nor limited by the terms of the Eleventh Amendment. *Alden v. Maine*, 527 U.S. 706, 713 (1999). The doctrine of state sovereign immunity is inherent in Texas statehood. *Univ. of the Incarnate Word v. Redus*, 602 S.W.3d 398, 403 (Tex. 2020). Under this doctrine, "no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Id.* (internal quotations omitted). Texas state law immunity has two distinct components: immunity from liability and immunity from suit. *Anthology*, 136 F.4th at 552 (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004)).

Sovereign immunity under Texas law does not limit the jurisdiction of federal courts. *Id.* at 553. In federal court, state law immunities are treated as non-jurisdictional, merits-based defenses. *Id.*

As noted, the Texas Supreme Court has determined that, under Texas law, ERCOT "enjoys sovereign immunity as an arm of the state." *CPS Energy*, 671 S.W.3d at 628. The Texas Tort Claims Act ("the "TTCA") provides a limited waiver of sovereign immunity. *See* TEX. CIV. PRAC. & REM. CODE § 101.025 ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter.").

The TTCA waives sovereign immunity in three limited areas: use of publicly owned automobiles, premises defects, and injuries arising out

of conditions or use of property.  *Id.* § 101.021.  The Trustee's gross negligence claim does not fall within the limited range of causes of action where Texas has waived sovereign immunity.[47]

Notwithstanding that the Trustee's gross negligence claim is both a state law claim and is barred by Texas law, the Court is hesitant to dismiss at this stage.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007) ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract.").  This is especially true given the complex treatment of state law immunities in Fifth Circuit case law.  *Compare Anthology*, 136 F.4th at 553 ("state-law immunities . . . must be treated as non-jurisdictional merits-based defenses"), *with St. Maron Props., L.L.C.* v. *City of Houston*, 78 F.4th 754 (5th Cir. 2023) (affirming dismissal of state tort claims on a 12(b)(6) motion due to the defendant's sovereign immunity).

Out of an abundance of caution, the Court will convert ERCOT's motion to dismiss with respect to the Trustee's gross negligence claim into a motion for summary judgment.  *See* FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  The parties will be given an opportunity to provide briefing on the issue.

## V.   CONCLUSION

The Trustee's takings claim will be dismissed by separate order.  The Trustee's gross negligence claim is converted to a motion for summary judgment.  A separate scheduling order will be issued.

---

[47] "The Texas Tort Claims Act... does not waive sovereign immunity from liability for gross, as distinguished from simple, negligence."  *Cantu v. Harris Cnty.*, No. 4:24-cv-2447, 2025 WL 786617, at *5 (S.D. Tex. Mar. 12, 2025) (Hanen, J.) (*quoting Hockaday v. Tex. Dept, of Crim. Just., Pardons & Paroles Div.*, 914 F. Supp. 1439, 1447 (S.D. Tex. 1996)).

SIGNED 12/10/2025

Marvin Isgur
United States Bankruptcy Judge